## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SHARON KAYE COX, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. CIV-07-0461-F |
| | ) |
| THE KEMPTON COMPANY, J.W. | ) |
| KEMPTON & ASSOCIATES, INC., | ) |
| KEMPTON GROUP | ) |
| ADMINISTRATORS, INC., | ) |
| KEMPTON, and XYZ | ) |
| CORPORATION, | ) |
| | ) |
| Defendants. | ) |

## ORDER

"Defendants' Motion to Dismiss First Amended Complaint," filed March 31, 2008, is before the court.  (Doc. no. 25.)  Plaintiff has responded by objecting to the motion, and no reply brief has been filed.  Accordingly, the motion is fully briefed and ready for determination.

## Background

This action arises out of events involving the termination of plaintiff's employment at The Kempton Company, where plaintiff worked most recently as a customer service specialist.  The first amended complaint alleges claims under the Americans With Disabilities Act (ADA claims), the Age Discrimination in Employment Act (ADEA claims), the Family Medical Leave Act (FMLA claims), and under Oklahoma law.  Defendants move to dismiss all claims under Rule 12(b)(6), Fed. R. Civ. P., for failure to state a claim.

This is the second round of motions to dismiss brought under Rule 12(b)(6). The court granted defendants' first motion to dismiss, because it appeared from the face of the original complaint that this action was barred by limitations.  The court allowed plaintiff to amend, resulting in the first amended complaint -- the complaint challenged by the instant motion to dismiss.  The original complaint is now a nullity, and from this point forward, references in this order to "the complaint" are references to the first amended complaint.

Standards

The inquiry under Rule 12(b)(6) is whether the complaint contains enough facts to state a claim for relief that is plausible on its face.  <u>Ridge at Red Hawk, L.L.C. v. Schneider</u>, 493 F.3d 1174, 1177 (10th Cir., 2007), quoting <u>Bell Atlantic Corp. v. Twombly</u>,___ U.S.___, 127 S.Ct. 1955, 1969, 1974 (2007).  To survive a motion to dismiss, a plaintiff must nudge her claims across the line from conceivable to plausible.  *Id.*  The mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims.  <u>Ridge at Red Hawk</u>, 493 F.3d at 1177.  In conducting its review, the court assumes the truth of the plaintiff's well-pleaded factual allegations and views them in the light most favorable to the plaintiff.  *Id.*

Structure of this Order

This order first addresses the viability of plaintiff's federal claims, beginning with defendants' argument that, as shown on the face of the complaint, plaintiff's ADA and ADEA claims are not timely.  Next, this order addresses whether the ADA and ADEA claims otherwise state a claim for relief.  Next, this order addresses whether the FMLA claims state a claim for relief.  This order then addresses the

timeliness of the FMLA claims.  After that, this order addresses plaintiff's state law claims.  Finally, this order determines the terms of dismissal.

<u>Timeliness of ADA and ADEA Claims</u>.

This action complains of an allegedly discriminatory discharge in violation of the ADA and the ADEA.  Both the ADA and the ADEA require the filing of an administrative charge with the Equal Employment Opportunity Commission (EEOC) within 300 days of the alleged discrimination.  42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626(d)(2).  The complaint alleges that plaintiff's employment was terminated on November 15, 2004, and that plaintiff's initial EEOC charge was initiated on or about the 1st day of December 2004, well within the 300-day filing period.

Defendants' arguments regarding the untimeliness of plaintiff's ADA and ADEA claims begin with the undisputed fact – nowhere alleged in this complaint – that plaintiff filed an EEOC charge on January 16, 2007, more than two years after the alleged discrimination.   (The January 16, 2007 charge is in addition to the December 1, 2004 charge alleged in this complaint.)  Defendants also rely on the computer screen print-out attached to the complaint as an exhibit.  (Doc. no. 20-2.)  Defendants argue that this print-out indicates that the inquiry which plaintiff contends constituted her December 1, 2004 charge was closed or otherwise non-existent on that date.  Without an effective December 1, 2004 charge, defendants essentially argue that plaintiff is left to rely on her untimely January 16, 2007 charge.

Plaintiff responds by citing facts included in her affidavit (an exhibit incorporated into the complaint), regarding the charge allegedly initiated on December 1, 2004.  Reading the body of the complaint together with the exhibits to the complaint (including plaintiff's affidavit, the print-out screen, and two questionnaires allegedly submitted by the plaintiff to the EEOC on December 1, 2004) the court finds that the complaint generally alleges as follows: that plaintiff submitted

questionnaires to the EEOC on December 1, 2004, which gave rise to a charge of discrimination which plaintiff later learned was assigned the charge number 311-2005-00328N; that when plaintiff called to check on her charge, she did not receive a call back until late 2005; that plaintiff was then told by the EEOC that the agency had been contacted by someone claiming to be the plaintiff who stated the charge had been abandoned[1]; and that, as a result, plaintiff never received a notice of right to sue with respect to her (first) charge but was told by the EEOC to file a new charge covering the same matters, which she promptly did.

These allegations raise fact questions concerning the events of December 1, 2004, which it would be prudent to resolve before reaching the question of whether the questionnaires constituted a timely EEOC charge.[2] These questions include: whether the questionnaires attached to the complaint were actually submitted to the EEOC on December 1, 2004; whether the EEOC has a record of receiving the questionnaires on that date or on any other date; the proper interpretation of matters disclosed on the computer print-out sheet attached to the complaint, including references to plaintiff's "charge #311-2005-00328N," an "initial inquiry" date of 12/01/2004, and entries regarding "Final Closure Action" and "Inquiry Closed" on 12/01/04.

---

[1]Defendants argue this particular factual allegation is implausible. The court, however, is not allowed to disregard this alleged fact as implausible. Rather, the court must take all factual allegations as true, and then determine whether the presumably true allegations state a claim for relief that is plausible on its face. The Bell Atlantic approach to Rule 12(b)(6) review does not, at least absent truly exceptional circumstances (*e.g.*, plaintiff alleges that the earth is flat), permit outright disbelief of plainly stated factual allegations.

[2]Accordingly, the court need not address the applicability of Federal Express Corporation v. Holowecki, 128 S. Ct. 1147 (2008), a case discussed at length in the parties' briefs.

For these reasons, the court rejects defendants' argument that the complaint shows plaintiff's ADA and ADEA claims to be time-barred on their face in their entirety.

Defendants have shown, however, that plaintiff's ADA and ADEA claims are time-barred on their face to the extent that such claims are alleged against entities other than The Kempton Company.  This is because the allegations show that the timeliness of plaintiff's ADA and ADEA claims depends on the questionnaires allegedly submitted to the EEOC on December 1, 2004.  The Kempton Company is the only entity identified in either of those questionnaires as the entity plaintiff's "complaint is against."  (Doc. no. 20-5, p. 1.)  As already noted, the ADA and ADEA require an administrative charge within 300 days of the complained of conduct.  Accordingly, plaintiff's ADA and ADEA claims alleged against companies other than The Kempton Company (defendants J. W. Kempton & Associates, Inc.; Kempton Group Administrators, Inc.; Kempton; and XYZ Corporation) will be dismissed as time-barred and for failure to exhaust administrative remedies.[3]

<u>Sufficiency of ADA Claim</u>

To recover under the ADA, a plaintiff must establish that she is a disabled person as defined by the ADA; that she is qualified, with or without reasonable accommodation, to perform the essential functions of the job she held or desired; and that her employer discriminated against her because of her disability.  <u>Doyal v.</u>

---

[3]Additionally, the court observes that the complaint does not describe the defendant entities' relationships to each other, and that no allegations suggest how plaintiff might have been employed by more than one entity.  The complaint attempts to tie all of the defendants to plaintiff's claims by simply defining the label "KEMPTON" as meaning all five of the defendant entities, and by then alleging that plaintiff was employed by "KEMPTON."  This is not a sufficient means by which to allege employment claims against five different defendants.  <i>Cf.</i>, Rule 11, Fed.R.Civ.P. and <u>Meek v. Torossian</u>, 2002 WL 32026156 at *9 (W.D. Okla.).    Accordingly, in addition to the other grounds stated in this order, all defendants other than The Kempton Company will be dismissed under Rule 12(b)(6) because the allegations against them are merely conclusory.

Oklahoma Heart, Inc., 213 F.3d 492, 495 (10th Cir. 2000).  The ADA defines a disability as a physical or mental impairment that substantially limits one or more of the major life activities of such individual, a record of such an impairment, or being regarded as having such an impairment. 42 U.S.C. § 12102(2).  To determine whether a plaintiff suffers from a disability that substantially limits one or more major life activity, the court must determine whether the plaintiff has an impairment, identify the life activity about which the plaintiff complains, and determine whether the impairment substantially limits that life activity.  Doyel, 213 F.3d at 495.

The ADA does not define the term "major life activity," but courts have construed it to mean a "basic life activity that the average person in the general population can perform with little or no difficulty," such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, sleeping, sitting, standing, lifting, reaching, and working.  Id. at 495-96.  In determining whether an individual is substantially limited in a major life activity, the following factors are considered:  the nature and severity of the impairment, the duration or expected duration of the impairment, and the permanent or long-term impact, or the expected permanent or long-term impact of or resulting from the impairment.  29 C.F.R. §§ 1630.2(j)(2)(i)-(iii).

The complaint alleges that plaintiff suffers from nerve and muscle problems in her neck and shoulders, carpal tunnel syndrome, osteoarthritis, and degenerative disc disease.  The complaint also alleges that in the year preceding her termination, plaintiff had a viral infection, an ear infection, vertigo, and pneumonia.  Leaving aside the question of whether these conditions constitute a defined impairment under the ADA, the complaint does not allege or suggest plaintiff is unable to take care of herself, perform manual tasks, walk, see, hear, speak, breathe, learn, sleep, sit, lift, stand, reach, or work.  Other than alleging that her ailments required her to take some

sick days from work, the complaint does not allege that plaintiff's ailments restricted any of her activities. The complaint does not allege that plaintiff is substantially limited with respect to any activity, much less with respect to a major life activity.

Plaintiff states that there is more than sufficient documentation of both plaintiff's and her husband's permanent conditions which shows that the conditions substantially limit one or more major life activities. The allegations referred to by the plaintiff do not show, however, that plaintiff was limited in a major life activity. For example, plaintiff cites allegations that her osteoarthritis and degenerative disc disease, coupled with other unspecified illnesses, forced her to miss several days of work in February and some time in March of 2004. She also cites allegations that she was ill from March 30 through April 7 of 2004, and had three doctors' appointments for a viral infection, ear infections and vertigo, during that time.

The ailments and limitations which plaintiff allegedly suffered, and the relatively short-term absences from work which the complaint alleges they caused, do not describe an ADA claim that is plausible on its face. *See generally*, Toyota Motor Manufacturing, Kentucky, Inc. v. Williams, 534 U.S. 184, 197-99 (2002) (ADA terms are interpreted strictly; to be substantially limited in performing manual tasks, individual must have impairment that prevents or severely restricts the individual from doing activities of central importance to most people's daily lives; impairment must also be permanent or long-term; medical diagnosis of carpel tunnel syndrome, for example, not enough to show a disability within the ADA).

The same is true for an ADA claim based on plaintiff's relationship to her husband and his condition. *See*, 42 U.S.C. § 12112(b)(4) (to recover under a theory of associated discrimination, a plaintiff must show that the employer discriminated against her because of the known disability of an individual with whom the plaintiff is known to have a relationship or association). The complaint does not allege that

plaintiff informed defendants of her husband's alleged disability, which she alleges was extremely high blood pressure.  Rather, plaintiff alleges that she supported her husband for ten years before he was awarded social security disability; that her husband's health insurance claims came through her office and were handled by co-workers; that members of defendants' upper management were present at plaintiff's son's wedding when her husband became "visibly red faced" due to his high blood pressure following which he had to be hospitalized for four days to bring his condition under control; and that management members knew about the nature of the emergency and the fact that this emergency required plaintiff to miss work.  These factual allegations do not state a plausible claim of discrimination under the ADA based on plaintiff's association with her husband.  The allegations also do not support a claim of regarded impairment,  nor do they support some type of hybrid claim of associative discrimination and regarded impairment.[4]

Accordingly, the complaint does not state a claim for relief under the ADA. Defendants' motion to dismiss plaintiff's ADA claims will be granted on this basis.

<u>Sufficiency of ADEA Claim</u>

In support of her ADEA claims, plaintiff alleges that her boss introduced her as the "veteran of the group," and that an unnamed younger worker told plaintiff that management had said their plan was "in with the new, and out with the old." (Doc. no. 20, ¶¶ 20, 21.)  The complaint alleges that, unlike plaintiff, younger employees were not subjected to ridicule and harassment over their attempts to do their job and to prevent mistakes.  (Doc. no. 20, ¶ 24.)  Among the elements of a *prima facie* ADEA case is the requirement that a plaintiff must have suffered a materially adverse employment action.  The types of derogatory comments described in the complaint do

---

[4]For example, the complaint alleges that "Plaintiff was 'perceived' as being disabled due to her marriage...."  (Doc. no. 20, ¶ 35.)

not constitute a materially adverse employment action. *See,* Sanchez v. Denver Public Schools, 164 F.3d 527, 533 (10th Cir. 1998) (calling an older teacher "an old fossil," and welcoming "bright young teachers" at first staff meeting, are not remarks showing adverse employment action for purposes of a retaliation claim under the ADEA).

Accordingly, the complaint does not state a claim for relief under the ADEA that is plausible on its face. Defendants' motion to dismiss plaintiff's ADEA claims will be granted on this basis.

### Sufficiency of FMLA Claim

The FMLA mandates that certain employers provide employees suffering from a serious medical condition with up to twelve weeks of unpaid leave per year. Bass v. Potter, 522 F.3d 1098, 1099 (10th Cir. 2008). In addition to qualifying exigencies based on family serving on active military duty, the FMLA provides that an employee is entitled to FMLA leave based on: births; adoptions or assuming foster care; caring for a spouse, son, daughter, or parent of the employee if such individual has a serious health condition; or a serious health condition that makes the employee unable to perform the functions of the employee's position. 29 U.S.C. §2612(a)(1)(A)-(D). The two conditions arguably material here are the last two, both of which require a serious health condition. The FMLA defines a serious health condition as an illness, injury, impairment, or physical or mental condition that involves inpatient care in a hospital, hospice or residential medical care facility; or continuing medical treatment by a health care provider. 29 U.S.C. § 2611(11).

The complaint does not allege that plaintiff was ever denied leave needed as a result of her own, or her husband's, medical condition. Thus, the court presumes plaintiff intends to allege that she was retaliated against for taking FMLA time-off (although the complaint never states this). Regardless of the intended FMLA theory of recovery, plaintiff must show that she is within the protected class. *See*, *e.g.*,

Doebele v. Sprint/United Management Co., 342 F.3d 1117, 1135 (10th Cir. 2003) (to establish *prima facie* case of reprisal under the FMLA, plaintiff must show, among other things, protected employee action).  In that regard, the legislative history of the FMLA shows that Congress intended the FMLA to cover serious illnesses rather than minor illnesses, the latter of which are handled by the employer's sick leave policy. Brannon v. OshKosh B'Gosh, Inc., 897 F. Supp. 1028, 1035 (M.D. Tenn. 1995); *and see*, Collins v. NTN-Bower Corp., 272 F.3d 1006, 1008 (7th Cir. 2001) ("sick" does not imply a "serious health condition").

The complaint alleges:  that plaintiff missed three and one-half hours of time from work in February of 2004, when her husband passed out on the driveway due to a drop in his blood pressure; that due to plaintiff's osteoarthritis and degenerative disc disease, coupled with other illness, plaintiff missed several days of work in February and some time in March of 2004; that plaintiff took a vacation in late March of 2004 to Las Vegas, and that when she returned she was ill from March 30 through April 7, with three doctors' appointments for a viral infection, ear infections, and vertigo, during that time; that on April 9, 2004, plaintiff asked if she could work through lunch and go home one hour early but she was ordered to leave, forcing her to miss four hours of work; that plaintiff took vacation between July 5 and July 9, 2004, for her son's marriage, and that at the time of the wedding her husband became red-faced due to extremely high blood pressure which required him to be hospitalized for four days; that members of management were present at the wedding so that the company was aware of the nature of plaintiff's husband's medical emergency which required plaintiff to miss work; and, finally, that during her husband's hospitalization plaintiff contracted pneumonia which forced her to miss one additional day of work, which was approved.  (Doc. no. 20, ¶¶ 28-29, 36-40.)

Of these occasions, the only instance potentially subject to the FMLA is the time plaintiff missed work to care for her husband during his hospitalization for high blood pressure in July of 2004. The other absences were either for short-term illnesses plaintiff suffered or, in one case, for a short-term illness plaintiff's husband suffered. Thus, except for the time missed from work in order to care for plaintiff's husband during his hospitalization, the complaint fails to state a claim for relief under the FMLA because the allegations show there were no serious health conditions of the type necessary to support a plausible FMLA claim; in other words, there are no allegations to show that plaintiff was in an FMLA-protected class.

Moreover, there are no allegations that plaintiff complied with the notice provisions of the FMLA. Even when leave is not foreseeable, an employee should give notice to the employer as soon as practicable. 29 C.F.R. § 825.303(a). Although the complaint states that "[a]ny and all time missed by Plaintiff was documented and related to illness or family illness as contemplated by the [FMLA]" (doc no. 20, ¶ 41), this conclusory allegation is not sufficient to show that plaintiff's employer knew the FMLA might apply to the absences detailed in the complaint. *See*, Collins, 272 F.3d at 1009 (7th Cir. 2001) (plaintiff failed in her obligation to tell the employer enough to suggest that the FMLA may be pertinent). The complaint includes no allegations showing that plaintiff did anything to make her employer aware of the applicability of the FMLA to her absences. The complaint alleges no facts to show that defendants were aware, or should have been aware, of any absences to which the FMLA applied.

Accordingly, the complaint does not state a claim for relief under the FMLA that is plausible on its face. Defendants' motion to dismiss the FMLA claims will be granted on this basis.

## Timeliness of FMLA Claims

As an alternative ground for dismissal, the court next considers defendants' argument that the FMLA claims should be dismissed as untimely.  Unlike the ADA or the ADEA, the FMLA does not require a complainant to file an administrative charge prior to filing suit.  Rather, the FMLA includes a two-year statute of limitations which may be lengthened to three years in the case of a willful violation. 29 U.S.C. §2617(c)(1),(2).

Given the court's findings that all but one of the medical conditions described in the complaint are conditions to which the FMLA does not apply, and given the court's finding that no allegations show that defendants were aware or should have been aware that the FMLA applied to plaintiff's absences, the court finds that the allegations foreclose a willful violation of the FMLA.  *See*, Bass, 522 F.3d at 1103-04 (for three-year statute of limitations to apply, a plaintiff must demonstrate that employer knew or showed reckless disregard for whether its conduct was prohibited by the FMLA).  The result is that the Act's two-year limitations period applies to plaintiff's FMLA claims.  Because this action was filed more than two years after the date plaintiff's employment was terminated, plaintiff's FMLA claims are time-barred as a matter of law.

Thus, in addition to other grounds for dismissal of some or all of plaintiff's FMLA claims, the court finds that the complaint does not state a claim for relief that is plausible on its face under the FMLA, because the allegations show that plaintiff's FMLA claims are time-barred.  Defendants' motion to dismiss plaintiff's FMLA claims will be granted on this basis.

## State Law Claims

The complaint alleges claims based on Oklahoma's anti-discrimination statutes and on unidentified Oklahoma common law.  (Doc. no. 20, ¶ 10.)  The complaint

states, however, that state law statutory claims are only alleged to the extent they do not duplicate claims or remedies available under federal law. Plaintiff has not identified any discrimination claims based on Oklahoma statutes which would differ, with respect to their elements or remedies, from plaintiff's federal discrimination claims. The court finds that claims based on Oklahoma's anti-discrimination statutes fail under Rule 12(b)(6) for the same reasons that plaintiff's federal discrimination claims fail. With respect to her state common law claims, plaintiff concedes that public policy claims, "Burk" claims, and other common law claims, are barred by limitations. Plaintiff has not identified any other state common law theories of recovery upon which she bases her claims. Accordingly, plaintiff's state common law claims are barred by limitations, and those claims will be dismissed on that ground.

For these reasons, the court finds that the complaint fails to state any state law claims that are plausible on their face. Defendants' motion to dismiss plaintiffs' state law claims will be granted on this basis.

<u>Terms of Dismissal</u>

Although plaintiff's response brief requests leave to amend to cure any deficiencies identified by the court, plaintiff has not proposed any new factual allegations that could cure the deficiencies cited in this order. Moreover, the complaint already includes a detailed description of the events and conditions that underlie plaintiff's claims. This is especially so, given the fact that plaintiff's affidavit and the two questionnaires which she alleges constitute her EEOC charge are incorporated into the complaint. Indeed, in several respects, it is the details of the allegations – for example, regarding plaintiff's dependency on the questionnaires to support timeliness, the nature of the alleged age-related comments, the nature of plaintiff's and her husband's ailments, and the nature and duration of plaintiff's absences from work – that reveal the deficiencies in plaintiff's claims. The court

concludes that amendment would be futile, and that this action should be dismissed with prejudice.

Conclusion

After careful consideration of the pleadings, the parties' submissions, and the relevant legal authorities, defendants' motion to dismiss is **GRANTED**.  This action is dismissed with prejudice under Rule 12(b)(6), for failure to state a claim upon which relief may be granted.

Dated this 26th day of June, 2008.


STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE


07-0461p014(pub).wpd